# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

BRITTAIN D. WALLER,

      **Plaintiff,**

                                      **Case Number 2:25-cv-672**

      **v.**                              **Judge Edmund A. Sargus, Jr.**

                                        **Magistrate Judge Kimberly A. Jolson**

OHIOHEALTH CORPORATION, *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on several pending motions. They are:

- Motion for Judgment on the Pleadings filed by Defendants OhioHealth Corporation, Catharyn DiBella, RN, and Emily Combes, LISW (ECF No. 50);

- First Motion for Leave to File Supplemental Memorandum in Opposition filed by Plaintiff Brittain Waller (ECF No. 64);

- Motion for Judgment on the Pleadings filed by Defendants Tiffany Nicole Burneka, MD, Payton Hurl, PA, and Brian Marshall, MD (ECF No. 68);

- Motion for Judgment on the Pleadings filed by Defendants Soumi Dey, CNP, and Columbus Springs Dublin (ECF No. 70);

- First Motion for Judgment on the Pleadings filed by Defendant Ivana Balic, MD (ECF No. 71);

- First Motion for Leave to File Second Amended Complaint filed by Plaintiff Brittain Waller (ECF No. 81); and

- Motion to Strike filed by Defendants OhioHealth Corporation, Catharyn DiBella, RN, and Emily Combes, LISW (ECF No. 94).

For the reasons below, the Court **GRANTS in part** and **DENIES in part** Plaintiff

Brittain Waller's First Motion for Leave to File Second Amended Complaint. (ECF No. 81.) The

Court **DENIES as moot without prejudice** all other pending motions, as they pertain to

Plaintiff's First Amended Complaint. (ECF Nos. 50, 64, 68, 70, 71, 94.)

**BACKGROUND**

I.      **Factual Background**

The Court summarizes the allegations set forth in Plaintiff's 32-page proposed Second Amended Complaint. (ECF No. 88.) This action arises out of medical treatment Plaintiff received in June 2024 at various facilities in Columbus, Ohio. (*Id.* PageID 318, 320.) Plaintiff alleges that healthcare facilities, medical providers, and law enforcement officers violated her civil rights and committed tortious actions by providing her with substandard medical treatment and subjecting her to an involuntary psychiatric hold. (*Id.* PageID 318–20.) Plaintiff was a licensed physician in postgraduate medical training employed by OhioHealth at the time the events underlying this lawsuit transpired. (*Id.* PageID 319.) She also alleges that the involuntary psychiatric hold resulted in adverse professional and employment consequences. (*Id.* PageID 318.)

Plaintiff alleges that she presented to the OhioHealth Hilliard Emergency Department for medical evaluation for severe back pain and muscle spasms on June 7, 2024, and was transferred to Riverside Methodist Hospital, then Columbus Dublin Springs, and finally Dublin Methodist Emergency Department over the next few days. (*Id.* PageID 318, 320.) Plaintiff alleges that she was placed on an involuntary psychiatric hold and physically prevented from leaving the hospital, but those restrictions were not warranted because she explicitly denied suicidal ideation. (*Id.* PageID 321–25.) Plaintiff further alleges that her medical providers failed to adequately consider her symptoms, documented false information, denied her access to psychiatric evaluations, interfered with her ability to contact her family and her attorney, and misrepresented information to the police. (*Id.* PageID 321–34.) OhioHealth staff called the police the morning of

2

June 7, 2024, to report Plaintiff as combative, although Plaintiff alleges this characterization was false. (*Id.* PageID 324.)

Plaintiff claims that she experienced scrutiny, monitoring, harassment, and retaliation at work following her perceived mental health crisis. (*Id.* PageID 336.) Finally, Plaintiff believes complaints and reports she made concerning discrimination, harassment, and substandard medical care were contributing factors to the allegedly unlawful treatment she experienced. (*Id.* PageID 340–41.)

## II.     Procedural Background

Plaintiff, proceeding *pro se*, filed this lawsuit in June 2025 (ECF No. 1), and filed a First Amended Complaint to remedy a typographical error a few weeks later (ECF No. 19). The First Amended Complaint named the following entities and individuals as Defendants: OhioHealth Corporation; Brian Marshall, MD (physician at OhioHealth); Emily Combes, LISW (social worker at OhioHealth); Catharyn DiBella, RN (nurse at OhioHealth); Payton Hurl, PA (physician assistant at OhioHealth); Tiffany Nicole Burneka, MD (physician at OhioHealth); Columbus Springs Dublin; Ivana Balic, MD (physician at Columbus Springs Dublin); Soumi Dey, CNP (nurse practitioner at Columbus Springs Dublin); and John Does (unknown individuals or entities who participated in the misconduct described). (*See generally id.*)

In September and October 2025, all Defendants who were named in the First Amended Complaint, except for the unidentified John Doe Defendants, moved for judgment on the pleadings. (ECF Nos. 50, 68, 70, 71.) The Court refers to the Defendants named in the First Amended Complaint as the "Current Defendants" herein. Plaintiff responded in opposition to the motions for judgment on the pleadings (ECF Nos. 52, 83, 91, 92), and some Current Defendants replied in support. (ECF Nos. 56, 99.) Then, in November 2025, Plaintiff moved for leave to file

3

a Second Amended Complaint. (ECF No. 81.) The Current Defendants responded in opposition

(ECF No. 85, 95, 99, 100, 103), and Plaintiff replied in support (ECF Nos. 104, 105, 106, 107).

Plaintiff's proposed Second Amended Complaint names the Current Defendants and adds

the following Defendants: Hilliard Division of Police and John Doe Officers; Ohio Physicians

Health Program and John Doe Employees; State Medical Board of Ohio and John Doe

Employees; and Norwich EMS and John Doe Personnel ("New Defendants"). (ECF No. 88,

PageID 319–20.)

The proposed Second Amended Complaint sets forth the following federal claims:

violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 for unlawful

seizure and detention; violations of the First and Fourth Amendments under § 1983 for

retaliation; violations of procedural and substantive due process under the Fourteenth

Amendment under § 1983; and disability discrimination in violation of the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA"), Section 504 of the Rehabilitation Act, 29

U.S.C. § 794, and the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd,

("EMTALA"). (*Id.* PageID 342–46.) It also includes the following state-law claims: false

imprisonment, battery, medical malpractice, negligence, intentional infliction of emotional

distress, collateral consequences of false psychiatric labeling,[1] and denial of meaningful access

to public services. (*Id.*)

Shortly after filing her proposed Second Amended Complaint, Plaintiff moved for leave

to file a Third Amended Complaint. (ECF No. 93.) The Court denied that motion and stated that

---

[1] Plaintiff also lists "collateral consequences of false psychiatric labeling" (Count IX) as a claim under § 1983 (ECF No. 88, PageID 345), but the Court interprets Count IX to be alleging consequences of previously asserted claims, rather than an independent violation of a right secured by the Constitution and laws of the United States under § 1983.

Plaintiff may seek leave to amend for a third time only after the Court rules on her second amendment motion and all of Defendants' motions for judgment on the pleadings. (ECF No. 102.)

The Court begins by addressing Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 81) because a decision granting that Motion would render the remaining motions—which pertain to Plaintiff's First Amended Complaint—moot.

**LEGAL STANDARD**

Rule 15 of the Federal Rules of Civil Procedure provides that in situations other than amending a pleading as a matter of course under Rule 15(a)(1) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Cain v. Birge & Held Prop. Mgmt., LLC*, No. 2:23-cv-695, 2024 WL 5347353, at *2 (S.D. Ohio Dec. 3, 2024) (quoting *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* at *3 (quoting *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005)). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

**ANALYSIS**

Plaintiff seeks leave to file a Second Amended Complaint so that she can "clarify factual allegations, correct misstatements, and include additional defendants." (ECF No. 81, PageID 287.) In response, the Current Defendants argue that Plaintiff's proposed complaint is prejudicial and futile.[2] (ECF Nos. 85, 95, 99, 100, 103.)

**I.     Prejudice**

The Current Defendants argue they will be prejudiced by Plaintiff's Second Amended Complaint as it will continue to delay the outcome of this case and inflate costs. (ECF No. 95, PageID 450–52.) Yet any prejudice to the Current Defendants does not warrant denying Plaintiff's request to file a Second Amended Complaint at this time. The case is still at an early stage of litigation and discovery has been stayed. (ECF No. 66.) Plaintiff has amended her Complaint once before, but did so only to correct a typographical error. (ECF Nos. 18, 19.) The claims asserted in the proposed Second Amended Complaint are closely related to those previously asserted. And the Court addresses the merits of the Current Defendants' futility arguments below to promote efficiency.

The Court recognizes, however, that Plaintiff drafted her proposed Second Amended Complaint in response to the Current Defendants' motions for judgment on the pleadings and this litigation will not progress if that pattern continues. (ECF No. 81, PageID 287.) The Court notes for Plaintiff's awareness that the cumulative effect of repeated amendments can cause undue delay and prejudice such that future requests to amend may be denied. *See Modesty v.*

---

[2] Plaintiff objected to some Defendants' decision to "incorporate by reference" other Defendants' responses to Plaintiff's Motion for Leave to File Second Amended Complaint. (ECF No. 107, PageID 513.) The Court finds Defendants' approach to be an acceptable one.

*Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011) ("Because the district court had already allowed for two amendments, it was not an abuse of discretion to deny leave to amend a third time.").

## II.     Futility

The Current Defendants argue that the claims asserted against them in the proposed Second Amended Complaint are futile. (ECF Nos. 95, 99, 100, 103.) But they do not address whether the claims asserted against the New Defendants are futile, too. As such, the Court declines to deny Plaintiff's Motion for Leave to File Second Amended Complaint on futility grounds with respect to claims asserted against the New Defendants. This decision does not, however, preclude the New Defendants from moving to dismiss the claims asserted against them once they have been properly served with process in this action.

Now, the Court turns to the merits of the Current Defendants' futility arguments.

### A.     Section 1983 Claims

Plaintiff's Second Amended Complaint includes claims under § 1983 for violations of the First, Fourth, and Fourteenth Amendments. (ECF No. 88, PageID 342–45.) To state a § 1983 claim, Plaintiff must allege "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 411 (6th Cir. 2006). To determine whether a private actor's conduct is fairly attributable to the state, courts consider whether the conduct (1) "involve[s] a traditionally exclusive governmental function," (2) is "'entwined with' government decisions or fairly attributable to the government based on a close 'nexus' between the state and the

7

challenged conduct," or (3) was "compelled" by the government. *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 281 (6th Cir. 2023).

The Current Defendants are private actors, so Plaintiff's § 1983 claims are futile unless the Current Defendants' conduct is fairly attributable to the state. Liberally construed, the proposed Second Amended Complaint alleges that the Current Defendants engaged in state action by (1) acting jointly with law enforcement to restrain and detain Plaintiff by way of an involuntary psychiatric hold and (2) providing inaccurate information to the Ohio Physicians Health Program and the State Medical Board of Ohio. (ECF No. 88, PageID 336, 342.)

First, under similar circumstances to those present here, this Court has declined to hold private medical providers liable as state actors under § 1983 for involuntary medical detainments. *Collins v. City of Norwood, Ohio*, No. 1:23-cv-632, 2025 WL 2022116, at *7–8 (S.D. Ohio July 18, 2025) (Cole, J.); *Kister v. Henry*, No. 2:12-cv-119, 2014 WL 12770095, at *6–8 (S.D. Ohio Mar. 13, 2014); *Mathis v. Doctor's Hosp. (W.)*, No. 2:12-cv-156, 2012 WL 995761, at *3–4 (S.D. Ohio Mar. 22, 2012) (Deavers, M.J.), *report and recommendation adopted*, 2012 WL 1309283 (S.D. Ohio Apr. 16, 2012) (Smith, J.). For example, in *Collins*, this Court recently held that a medical center and medical personnel did not qualify as state actors subject to liability under § 1983 for conduct arising out of their participation in the plaintiff's involuntary confinement for psychiatric treatment. 2025 WL 2022116, at *7–8. So too, here.

Beginning with the exclusive-governmental-function test, in accordance with this Court's precedent, the Current Defendants did not exercise a role traditionally within the government's exclusive domain by detaining Plaintiff for psychiatric treatment. *Id.* at *7 (quoting *Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 F. App'x 224, 226–27 (6th Cir. 2004)). In addition,

8

Plaintiff did not supply the historical analysis necessary "to determine whether an action is one traditionally the exclusive prerogative of the state." *Id.* (quoting *Ellison*, 108 F. App'x at 227).

Turning now to nexus, Plaintiff hasn't alleged facts showing "a sufficiently close nexus between the government" and the Current Defendants' conduct such that their conduct "may be fairly treated as that of the state itself." *Id.* at *8; *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007). Plaintiff alleges that OhioHealth staff contacted the police department and that police officers were present during the involuntary hold. (ECF No. 88, PageID 324–27.) These allegations do not render the Current Defendants' conduct fairly attributable to the state. *See Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police . . . does not expose a private individual to liability for actions taken 'under color of law.'"); *Dressler v. Rice*, 739 F. App'x 814, 824 (6th Cir. 2018) ("A mere request for assistance from an available police officer cannot be sufficient to form a nexus between the state and the private action."). The closest Plaintiff comes to alleging a sufficient nexus is stating that a police officer "grabbed her right arm and pulled her onto a hospital bed so staff could secure the four-point restraints." (ECF No. 88, PageID 326.) But this single action does not suggest that the state was so intimately involved with Plaintiff's psychiatric detainment that the Current Defendants may be held liable as state actors under § 1983. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) ("[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983.").

Finally, considering compulsion, Plaintiff does not allege that the government compelled the Current Defendants to detain her for psychiatric treatment. In other words, Plaintiff's allegations do not support concluding that the government offered the Current Defendants "such

significant encouragement" that their "choice must in law be deemed to be that of the State."

*Ciraci*, 62 F.4th at 283.

Second, Plaintiff appears to allege that the State Medical Board of Ohio and the Ohio

Physicians Health Program relied on inaccurate information from "OhioHealth employees acting

jointly with state actors" to take retaliatory actions. (ECF No. 88, PageID 336–37.) This

allegation is vague, unclear, and speculative. Conclusory assertions of coordination are

insufficient to transform private conduct into state action.

Even though private conduct can constitute state action in some circumstances, Plaintiff

failed to allege any such circumstances here, so her § 1983 claims against the Current

Defendants are futile.

### B.      ADA and Rehabilitation Act Claims

Plaintiff's Second Amended Complaint includes disability discrimination claims under

the ADA and the Rehabilitation Act. (ECF No. 88, PageID 343.) Plaintiff alleges that the

Defendants perceived her as having a mental disability because they labeled her hysterical,

combative, suicidal, or mentally unstable. (*Id.*) Plaintiff also alleges she experienced physical

conditions that substantially limited major life activities, including severe back pain, muscle

spasms, and critically low phosphorous. (*Id.*) Plaintiff contends that the Defendants

discriminated against her by (1) "subjecting her to an involuntary psychiatric hospitalization

without legal justification;" (2) "[d]enying appropriate medical care for physical conditions;" and

(3) "[f]ailing to provide reasonable accommodations or engage in an interactive process,

including restricting access to qualified providers, imposing arbitrary evaluation requirements,

and misrepresenting compliance efforts." (*Id.*)

The first two allegations arise out of Plaintiff's disagreement with medical care afforded to her and, as such, sound in medical malpractice. The Sixth Circuit has explained that neither the ADA nor the Rehabilitation Act provide a cause of action for medical malpractice. *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000); *see also Woods v. Rumer*, No. 2:23-cv-4089, 2025 WL 2597209, at *6 (S.D. Ohio Sep. 8, 2025) (Deavers, M.J.), *report and recommendation adopted*, 2025 WL 2855245 (S.D. Ohio Oct. 8, 2025) (Graham, J.), ("[N]either medical treatment decisions nor medical malpractice may form the basis of a claim under the ADA.").

The third set of allegations Plaintiff relies on are too vague to plausibly allege an ADA or Rehabilitation Act claim against the Current Defendants. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ("The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible."). Plaintiff does not identify an accommodation that she requested or explain what "interactive process" refers to. And, although Plaintiff's Second Amended Complaint is not a model of clarity, it appears these allegations are connected to actions taken by the State Medical Board of Ohio and the Ohio Physicians Health Program, not the Current Defendants. (*See* ECF No. 88, PageID 337–40 (discussing access to qualified providers, evaluation requirements, and compliance efforts in connection with the Ohio Physicians Health Program, to which she was referred by the State Medical Board of Ohio).) As such, the Court can infer no actionable claim under the ADA or the Rehabilitation Act against the Current Defendants.

Thus, the proposed amendments related to Plaintiff's ADA and Rehabilitation Act claims against the Current Defendants are futile.

## C. EMTALA Claim

Plaintiff's Second Amended Complaint briefly refers to EMTALA on two occasions. First, in the introduction, Plaintiff says "Defendants' conduct violated her rights under . . . [EMTALA]." (ECF No. 88, PageID 318–19.) Second, under Count II, titled "Disability Discrimination (ADA & Rehabilitation Act, 42 U.S.C. § 12101 et seq.; 29 U.S.C. § 794)," Plaintiff states that Defendants' actions violated EMTALA (42 U.S.C. § 1395dd) by "failing to stabilize a medical emergency prior to transfer." (*Id.* PageID 343.)

Congress intended for EMTALA to address "incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a medical screening that would have been provided a paying patient, or transferred or discharged a patient without taking steps that would have been taken for a paying patient." *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 268 (6th Cir. 1990). The Sixth Circuit summarized EMTALA's requirements as follows:

> For all hospitals that participate in Medicare and have an "emergency department," EMTALA sets forth two requirements. First, for any individual who "comes to the emergency department" and requests treatment, the hospital must "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Second, if "the hospital determines that the individual has an emergency medical condition, the hospital must provide either (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility [.]" § 1395dd(b).
>
> . . .
>
> The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . [*inter alia*] placing the health of the individual . . . in serious jeopardy[.]" § 1395dd(e)(1)(A)(i). "To stabilize" a patient with such a condition means "to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of

12

the individual from a facility[.]" § 1395dd(e)(3)(A). "Transfer" is defined in the statute to include moving the patient to an outside facility or discharging him. § 1395dd(e)(4).

*Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 579 (6th Cir. 2009).

Here, Plaintiff attempts to assert an EMTALA stabilization claim in her Second Amended Complaint (ECF No. 88, PageID 343), but this claim is futile. Plaintiff's brief mention of EMTALA without explaining which Defendants violated that statute or how those violations occurred is insufficient to plausibly allege such a claim. *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (explaining that naked assertions without further factual enhancement, formulaic recitations of the elements of a cause of action, and labels and conclusions are insufficient to survive a motion to dismiss). Plaintiff cites EMTALA as an aside under Count II of her Complaint, which is titled "Disability Discrimination" and includes allegations related to her ADA and Rehabilitation Act claims. (ECF No. 88, PageID 343.) As such, the proposed amendments related to Plaintiff's EMTALA claims against the Current Defendants are futile.

### D.     State Law Claims

In light of the above determinations, only state-law claims remain against the Current Defendants. In their responses to Plaintiff's request to file a second amended complaint, the Current Defendants briefly suggest that the Court should decline to exercise supplemental jurisdiction over Plaintiff's proposed state-law claims. (ECF No. 95, PageID 436, 438; ECF No. 99, PageID 467; ECF No. 100, PageID 477 (joining ECF No. 95); ECF No. 103, PageID 489 (joining ECF No. 99).) The Current Defendants do not provide further explanation, but their position appears to be premised on 28 U.S.C. § 1367(c)(3), which provides that district courts

13

may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."

The Court has discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367, but when a court dismisses all federal claims before trial, it should generally dismiss the state law claims. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). Here, however, federal claims remain pending against the New Defendants. Courts in this circuit have recently reached different conclusions when deciding whether to exercise supplemental jurisdiction under these circumstances (i.e., when only state-law claims remain against some defendants, but federal claims remain against other defendants). *Compare Kiekisz v. Cuyahoga Cnty. Bd. of Comm'rs*, No. 1:21-cv-00264, 2021 WL 5193985, at *8 (N.D. Ohio Nov. 9, 2021) (exercising supplemental jurisdiction), *with Patterson v. City of Clarksville*, No. 3:23-CV-00682, 2025 WL 3048999, at *18–19 (M.D. Tenn. Oct. 31, 2025) (declining to exercise supplemental jurisdiction).

As such, the Court concludes that the state-law claims alleged against the Current Defendants would not necessarily be futile and declines to dismiss them at this time. This decision does not, however, preclude the Current Defendants from filing a motion to dismiss in response to Plaintiff's Second Amended Complaint that re-argues—with additional support—the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) or addresses the merits of the state-law claims. The Court further notes that the Current Defendants may re-assert their supplemental jurisdiction argument if all federal claims are ultimately dismissed from this action.

To sum, the Court **GRANTS in part** and **DENIES in part** Plaintiff's First Motion for Leave to File Second Amended Complaint. (ECF No. 81.) Plaintiff's Second Amended Complaint (ECF No. 88) is now the operative complaint in this matter, excluding the claims

14

determined to be futile in this Opinion and Order, which are Plaintiff's federal claims (claims under § 1983, the ADA, the Rehabilitation Act, and EMTALA) against the Current Defendants (OhioHealth Corporation; Brian Marshall, MD; Emily Combes, LISW; Catharyn DiBella, RN; Payton Hurl, PA; Tiffany Nicole Burneka, MD; Columbus Springs Dublin; Ivana Balic, MD; and Soumi Dey, CNP). Plaintiff shall promptly effect proper service of process on the New Defendants (Hilliard Division of Police and John Doe Officers; Ohio Physicians Health Program and John Doe Employees; State Medical Board of Ohio and John Doe Employees; and Norwich EMS and John Doe Personnel).

The other motions pending in this case (ECF Nos. 50, 64, 68, 70, 71, 94) pertain to Plaintiff's First Amended Complaint (ECF No. 19) and are now moot.

## CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** (ECF No. 81) Plaintiff Brittain Waller's First Motion for Leave to File Second Amended Complaint.

The Court **DENIES as moot without prejudice** (ECF No. 50) Defendants OhioHealth Corporation, Catharyn DiBella, RN, and Emily Combes, LISW's Motion for Judgment on the Pleadings; **DENIES as moot without prejudice** (ECF No. 64) Plaintiff Brittain Waller's First Motion for Leave to File Supplemental Memorandum in Opposition; **DENIES as moot without prejudice** (ECF No. 68) Defendants Tiffany Nicole Burneka, MD, Payton Hurl, PA, and Brian Marshall, MD's Motion for Judgment on the Pleadings; **DENIES as moot without prejudice** (ECF No. 70) Defendants Soumi Dey, CNP, and Columbus Springs Dublin's Motion for Judgment on the Pleadings; **DENIES as moot without prejudice** (ECF No. 71) Defendant Ivana Balic, MD's First Motion for Judgment on the Pleadings; and **DENIES as moot without**

15

**prejudice** (ECF No. 94) Defendants OhioHealth Corporation, Catharyn DiBella, RN, and Emily

Combes, LISW's Motion to Strike.

      This case remains open.

      **IT IS SO ORDERED.**

**7/2/2026**                                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                                      **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**